UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

--oOo--

|  |  |
|---|---|
| In re: ) | Case No. 2:13-bk-38741-ER |
| ) | |
| SAAD ELDIN M. FATHI,    CH.11 ) | Los Angeles, California |
| ) | Wednesday, April 23, 2014 |
| _____ ) | 10:07 a.m. |

#11.00 HEARING RE: [37] MOTION TO RECONSIDER (RELATED DOCUMENTS 28 MOTION FOR RELIEF FROM THE AUTOMATIC STAY REAL PROPERTY (BNC-PDF)) MOTION FOR ORDERS: TO SET ASIDE, TO AMEND, TO MAKE ADDITIONAL FINDINGS OF FACT, FOR A NEW HEARING, FOR RELIEF FROM ENTRY, AND OR FOR RECONSIDERATION (TO ALTER OR AMEND) THE MARCH 25, 2014 ORDER [DOCKET 28] ISSUED BY THE COURT GRANTING THE MOTION FOR RELIEF FROM STAY [DOCKET 19] UNDER 11 USC SECTION 362 IN FAVOR OF WILMINGTON SAVINGS FUND SOCIETY FSB NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE PRIMESTAR-H FUND I TRUST (WILMINGTON), AS TO THE REAL PROPERTY AT 4424 HIGHLAND DRIVE CARLSBAD CA 92008 (PROPERTY) PER FRBP 9023/24 WHICH INCORPORATE FRCP RULES 50(E) AND 60(B) INTO BANKRUPTCY CASES, BASED ON NEW EVIDENCE OF VALUE OF THE PROPERTY AND THE AMOUNT OF SECURED DEBT AGAINST THE PROPERTY, BASED ON AN APPARENT INCORRECT CLAIM OF SECURED DEBT BY WILMINGTON, IN MR. MCDONNELS TESTIMONY, APPARENTLY OVERSTATING THE SAME BY $151,029.58, AND OR FOR MISTAKE, INADVERTENCE, SURPRISE, EXCUSABLE NEGLECT, AND FOR AN OSC RE A TEMPORARY AND OR

```
                              PRELIMINARY INJUNCTIVE ORDER
                              UNDER THE COURTS EQUITABLE
                              POWER, 11 USC SECTION 105(A) [AN
                              ADVERSARY ACTION IS BEING FILED
                              CONCURRENTLY HEREWITH REGARDING
                              THIS RELIEF] WHICH PLEADING IS
                              INCORPORATED BY THIS REFERENCE,
                              TO PREVENT IRREPARABLE HARM TO
                              MR. FATHI AND TO PREVENT HIS
                              CLAIMS FROM BECOMING MOOT BY
                              PRECLUDING SALE OF THE PROPERTY
                              PER FRBP 7007(7) AND 7065 MOTION
                              PT 2 # 2 VOLUME(S) MOTION PT 3 #
                              3 VOLUME(S) MOTION PT 4 # 4
                              VOLUME(S) MOTION PT 5 # 5
                              AFFIDAVIT DECLARATION OF FERANDO
                              RANGEL (APPRAISER) # 6 AFFIDAVIT
                              FURTHER DECLARATION OF SAAD
                              ELDIN M FATHI # 7 AFFIDAVIT
                              DECLARATION OF ANDREW P ALTHOLZ
                              # 8 EXHIBIT EXHIBIT 1 - ORDER
                              (DOCKET 28) # 9 EXHIBIT EXHIBIT
                              2 APPRAISAL REPORT OF FERNANDO
                              RANGEL # 10 EXHIBIT EXHIBIT 3
                              COPY OF REAL PROPERTY
                              DECLARATION OF MR. MCDONNELL
                              SUBMITTED BY WILMINGTON # 11
                              EXHIBIT EXHIBIT 4 RESINSTATEMENT
                              QUOTE OF 4-2-14 FROM
                              WILMINGTON'S SERVICER # 12
                              EXHIBIT EXHIBIT 5 NOTICE OF
                              DEFAULT ISSUED AND RECORDED BY
                              WILMINGTON'S FORECLOSURE
                              TRUSTEE)(ALTHOLZ, ANDREW)


             BEFORE THE HONORABLE ERNEST M. ROBLES, Judge

APPEARANCES:

For the Debtor:               Andrew P. Altholz
                              ANDREW P. ALTHOLZ
                              100 Wilshire Boulevard
                              Suite 950
                              Santa Monica, CA  90401-1145
```

APPEARANCES:   (Continued)

| | |
|---|---|
| For Wilmington: | Stephen Britt<br>LAW OFFICES OF LES ZIEVE<br>30 Corporate Park<br>Suite 450<br>Irvine, CA  92606 |
| Transcriber: | Anna Leon<br>AVTranz<br>845 North 3rd Avenue<br>Phoenix, AZ 85003<br>(800) 257-0885 |

Proceedings recorded by electronic sound technician, Maria Evangelista; transcript produced by AVTranz.

1                      LOS ANGELES, CALIFORNIA,

2               WEDNESDAY, MARCH 17, 2014 10:07 A.M.

3                               --oOo--

4          THE CLERK:  Please rise and come to order.  This

5   Court is now in session.  The Honorable Ernest M. Robles

6   presiding.

7          THE COURT:  Good morning.  Be seated, please.

8       (Group Response)

9          THE COURT:  Item 11, Saad Fathi.  May I have

10  appearances, please?

11         MR. ALTHOLZ:  Good morning, Your Honor.  Andrew

12  Altholz, A-L-T-H-O-L-Z, for Mr. Fathi.

13         MR. BRITT:  Good morning, Your Honor.  Stephen Britt

14  on behalf of Creditor, Wilmington.

15         THE COURT:  All right.  Thank you.

16         The Court has issued its tentative ruling.  And if

17  you could argue that, counsel.

18         MR. ALTHOLZ:  Thank you, Your Honor.

19         I just wanted to make some arguments about the items

20  in the tentative ruling that we haven't commented on yet.  I'd

21  like to argue that the highly unusual circumstances that are at

22  issue here is a combination of four different events.  Not just

23  the fact that Mr. Fathi had difficulty presenting at the

24  appraisal to the Court, in order to fully oppose the motion and

25  afford him his due process rights, for things that happened

1   that prevented that.  One is the appraisal which he was able to
2   to obtain from Mr. Rangel which we submitted as Exhibit 2, and
3   the circumstances that surrounded him obtaining that in a
4   timely manner, showing that the property was worth far more
5   than anybody thought that over $2,105,000.
6           The second item was the circumstances surrounding
7   declaration and testimony of Mr. David McDonnell who is the
8   managing director of Statebridge, servicer for the lender here,
9   Wilmington.  And his testimony was found it to be apparently
10  incorrect by a lot, substantial amount of money, in light of
11  the reinstatement quote that my client was not provided until
12  April 2, 2014, which he had been trying to obtain since before
13  the motion was filed.  He overstated the secured claim of
14  Wilmington by over $256,000, and then Wilmington didn't provide
15  the information in a timely manner for us to challenge their
16  motion.  And when you look at the calculation here that he
17  testified to, he said that the secured claim of Wilmington was
18  1,769,578.58.  But in fact, it was only 1,512,627.  So he's off
19  by 256-plus thousand dollars.  The principal of the note 1,175,
20  in the exhibits to the motion, I think it was docket 19, and
21  the reinstatement quote is Exhibit 4, showing an arrearage of
22  337,627.12.  And the fourth item is the is apparently incorrect
23  testimony led to incorrect calculations and findings about the
24  existence of an equity cushion under (d)(1).
25          The way one calculates the equity cushion is by

1   taking the fair market value of the security in the whole minus
2   the secured claim of the parties seeking relief. And in this
3   case, that's 2,105,000 minus 1,512,627.12, which left an equity
4   cushion of 592,372.88.  And the calculation is set for in the
5   In Re: Mellore case, which the Court had cited, at page 1400.
6   And they explain that it's not the debtor's equity interest in
7   the property that one uses to calculate the equity cushion,
8   it's the value of the property minus the secured claim at
9   issue.  And that's because the collateral is what the lender
10  bargained for in getting a security agreement.  They have a
11  note and they also have a deed of trust which encumbers not
12  just Mr. Fathi's one-third ownership of the property, it
13  encumbers the whole property.
14          There are cases that talk about instances where even
15  a debtor doesn't have any equity in the property and there's
16  still an equity cushion.  And that case is cited in In Re: San
17  Clemente Estates, Collier 2 on Bankruptcy § 361, and LaJolla
18  Mortgage, 18 BR 283, citing and reference a lot to a case
19  called In Re: Curtis, which is from a different district.  It's
20  from Pennsylvania.
21          THE COURT:  You're making arguments, and I'm looking
22  through the original response to the motion.  I don't see any
23  of those.
24          MR. ALTHOLZ:  Yeah.  I'm just trying to address the
25  tentative issue, the tentative ruling regarding the unusual

1  circumstances that give rise to the claim for reconsideration.
2  And I think fees for things that I've just tried to set forth
3  for the Court are the 4(d) situations that create unusual
4  circumstances.  In my practice over 20-something years, it's
5  unusual to have a secured creditor overstate a claim by more
6  than $200,000.  And that prevented Mr. Fathi from arguing these
7  issues to the Court originally.
8        THE COURT:  I still don't understand why that
9  prevented him from arguing what he's doing today previously,
10 when he had an opportunity to do so.
11       MR. ALTHOLZ:  Because we didn't have arrearage
12 calculation from the lender.  We didn't know that Mister -- I'm
13 sorry, his name escapes me.  Let me just look.  Mr. McDonnell's
14 testimony was so far off, we didn't know that.
15       THE COURT:  The argument did say that there was
16 sufficient equity cushion.
17       MR. ALTHOLZ:  That's true.  But I think in light of
18 this Court's findings that there was less than a 20 percent
19 question, those findings were not supported by the true facts.
20 And that's why I think it's an unusual circumstance.
21       THE COURT:  All right.  Anything else?
22       MR. ALTHOLZ:  Yes.  Lastly, as to the (d)(4) issues,
23 I did read the Link versus Wabash case, and I just wanted to
24 argue that that case involved dismissal of a litigation for
25 failure to prosecute based on an attorney's failure to attend a

1  pretrial conference.  I don't think it has a fair application

2  to this case.  I did a little research and I found a case

3  called In Re: First Yorkshire Holdings, which is a Ninth

4  Circuit BAP case, 470 B.R. 864.  And what that says is that the

5  standard for a creditor to meet their prima facie burden on a

6  (d)(4) claim is that they have to show three different

7  elements, not just the fact that there was multiple filings.

8  They have to show three different things by clear evidence, and

9  that those three things are they have to show the transfer of

10 some interest in the real property without the secured

11 creditor's consent or Court approval, which there's no evidence

12 of that; the multiple bankruptcy filing, dated show the filings

13 from 2010; but they did not show the third element of relief,

14 which is -- excuse me -- the true scheme to delay, hinder, or

15 defraud them in any manner.

16          Thank you, Your Honor.

17          THE COURT:  Right.  Thank you.

18          Counsel?

19          MR. BRITT:  Good morning, Your Honor.  Stephen Britt

20 on behalf of Creditor, Wilmington.

21          This morning, we had heard arguments that have not

22 been raised before.  They were not raised in the initial motion

23 for reconsideration, nor were they raised in the reply brief

24 regarding this equity percentage.  According to the Debtor's

25 schedules, they do have solely a 33 percent interest in the

1   property.  And as the Court said so well in its tentative
2   ruling, even accepting their numbers at their face value, the
3   property is still underwater.  They still owe approximately 1.5
4   million on the property at the equity is $700,000 with a
5   one-third interest in the property.
6          So even if you accept the numbers that they say at
7   their face value, there is no equity cushion in this case.  And
8   furthermore, this is not necessarily -- this is not exactly the
9   proper procedure how to do this.  If the Court -- if the
10  Debtors would like to go and try to request a temporary
11  restraining order, they can do so through the adversary
12  proceeding.  However, in this case, they are bringing forth a
13  request to reimpose the stay, which according to the <u>Cantor</u>
14  <u>versus Cantor</u> case that was cited in our opinion, that just
15  can't be done.  As the case said, it was essentially putting a
16  Humpty Dumpty back together again.  One cannot put together --
17  reimpose the stay once it's been lifted.
18         Furthermore, these are not highly unusual
19  circumstances.  The appraisal that was done by the Debtor in
20  this case could have been done years before, and it could have
21  been done in the months from when this case was filed to the
22  time in which the motion was filed in the motion was argued.
23  But unfortunately, due diligence simply wasn't used by the
24  Debtors in this case, and therefore it wasn't done.
25         And even if the Court were to take every, all the --

1  entire arguments' face value, there still is an independent
2  reason for the Court's original ruling, which was the bad
3  faith.  And this case is the fourth bankruptcy filed by the
4  Debtor, the first one was after the Debtor failed to make plan
5  payments, the second one was after there was serious
6  inconsistencies in the filings that occurred, and the third one
7  was filed just two days later, and the Debtor failed to show up
8  to the Debtor's -- the Creditor's hearing.
9          So the Court had extremely good solid grounds to say
10 that this was a bad faith filing under subsection D.
11         So even given -- even accepting the numbers that they
12 put forth, the equity cushion isn't there, and even if
13 accepting their argument that the equity cushion is there,
14 there's still an independent ground for the Court's previous
15 ruling.
16         So therefore I request that the Court deny the motion
17 for reconsideration.  Thank you.
18         THE COURT:  All right.  Thank you.
19         Anything else?
20         MR. ALTHOLZ:  I would just present the following.
21         I would beg to differ that these items are not raised
22 in the motion or the reply brief that we filed.  Second, we
23 were trying to address the Court's tentative ruling which is
24 quite detailed.  And it's my feeling that if you follow the
25 Mellore case and the proper calculation, there is a significant

1   equity cushion of hundreds of thousands of dollars to protect

2   this creditor.  And preventing the property from being

3   foreclosed would work not only to the benefit of the Debtor and

4   his family who reside at the residence, it would work for the

5   benefit of creditors in this bankruptcy estate because there's

6   sufficient funds to pay Wilmington its secured claim and

7   arrearages in full, and become current over a short period of

8   time, maybe 30 months or 40 months to reorganize, which is the

9   Debtor's true intent here.

10          The (d)(4) arguments, I still say they have not met

11  all three elements, only one.  And even that one I think when

12  viewed as the -- in the totality of the circumstances, where

13  you have an attorney filing Chapter 13s within a very short

14  period of time of one another, we're talking about a three-

15  month period, almost four years ago, and the 13s should never

16  have been filed in the first place, because this Debtor was

17  over the debt limit then.  It was quite clear, and he filed in

18  the wrong venue one time, filed it again -- you know, each one,

19  I could see where one could view it as a stalling tactic, but

20  when you look at the totality of the circumstances, you've got

21  this one attorney doing these things in a short period of time,

22  and then nothing for years to stop a foreclosure, to hinder a

23  foreclosure, you know, I just don't see the bad faith.

24          Thank you very much.

25          THE COURT:  All right.  I appreciate the argument.

1  Tentative will be the order, and you can prepare it, please,
2  counsel for Movant.
3          MR. ALTHOLZ:  Thank you.
4          MR. BRITT:  Thank you.
5          THE COURT:  Thank you.
6          MR. ALTHOLZ:  Have a good afternoon, Your Honor.
7          THE COURT:  Thank you.
8      (Proceedings Concluded)
9
10
11
12  I certify that the foregoing is a correct transcript from the
13  record of proceedings in the above-entitled matter.
14
15  Dated: July 1, 2014                    _____
                                            AVTranz, Inc.
16                                          845 North 3rd Avenue
                                            Phoenix, AZ  85013
17
18
19
20
21
22
23
24
25